2002 UT App 332

**David JOHANNESSEN and Linda Johannessen, Plaintiffs and Appellants,**

v.

**CANYON ROAD TOWERS OWNERS ASSOCIATION, Defendant and Appellee.**

**No. 20010230–CA.**

Court of Appeals of Utah.

Oct. 10, 2002.

Russell J. Gallian, Gallian Westfall Wilcox & Wright, St. George, for Appellants.

David H. Tolk and John N. Braithwaite, Plant Wallace Christensen & Kanell, Salt Lake City, for Appellee.

Before Judges JACKSON, BILLINGS, and THORNE.

## OPINION

THORNE, Judge.

¶ 1 Appellants David and Linda Johannessen (Johannessens) appeal the trial court's grant of summary judgment in favor of Appellee Canyon Road Towers Owners Association (Association), the dismissal of the Johannessens' cross-motion for partial summary judgment, and the striking of a portion of an affidavit proffered by the Johannessens. We affirm.

## BACKGROUND

¶ 2 The Johannessens are the current owners of condominium unit P9 within Canyon Road Towers Condominium Project (Canyon Road Towers), located in Salt Lake City, Utah. Canyon Road Towers was created in 1976 by Declaration of Condominium (Declaration). The Declaration was filed in the Office of the Recorder of Salt Lake County, Utah, and sets forth the rules and regulations governing Canyon Road Towers. The Association is comprised of all persons who own units at Canyon Road Towers and is managed by a committee, comprised of five unit owners, charged with the responsibility and authority to create and enforce reasonable rules covering the operation and maintenance of Canyon Road Towers.

¶ 3 Pursuant to the Declaration, every unit owner in Canyon Road Towers is obligated to pay his or her proportionate share of the common expenses as a monthly assessment. The proportionate share of common expenses is directly tied to the undivided ownership interest that an owner has in the common areas and facilities of Canyon Road Towers. The undivided ownership interest is computed by determining the ratio between the par value associated with a single unit, as specifically set forth in the Declaration, and the aggregate par value of all units in Canyon Road Towers. The Declaration assigned a par value of 6410 to the Johannessens' unit, which resulted in that unit having a 1.282 percent ownership interest in the common areas and facilities.

¶ 4 During the purchase negotiations, the Johannessens learned that the par value on unit P9 was higher than the par value assigned to other units in the building. It was explained that the unit's par value was higher because unit P9 was considered the penthouse unit and included many unique features that other units in the building did not possess. The increased par value correlated with a greater ownership interest in the common areas and a larger monthly assessment.

¶ 5 As a purchase condition made with the previous unit owners, the Johannessens insisted that the Association reduce the monthly assessment to $400 per month. The Association, through its management committee, agreed to decrease the assessment to $416 per month. The agreement was not reduced to writing, but a discussion of the agreement was noted in the management committee's minutes. The Association arrived at the new assessment amount by adding the total monthly assessment amount of the two units directly underneath unit P9, which when combined had a square footage equal to unit P9, and then further reducing that figure by eliminating any duplicated maintenance and reserve fees.

¶ 6 In 1993, when the Johannessens finalized the purchased of unit P9, the Association billed the Johannessens $416 per month in assessment fees, increasing the fees propor-

tionally whenever the Canyon Road Towers' monthly assessments generally increased. The Johannessens enjoyed this reduced assessment amount until 1996.

¶ 7 In a letter dated August 5, 1996, the Association informed the Johannessens that the Association intended to increase the Johannessens' monthly assessment on October 1, 1996. The letter stated that the Association had acted without authority when it lowered the monthly assessment in 1993. The Johannessens paid the increased monthly assessment under protest and filed suit against the Association alleging breach of contract.

¶ 8 The Johannessens argued that the Association should be prevented from increasing the monthly assessment under the doctrine of promissory estoppel and pursuant to Utah Code Ann. § 16–6–22 (1999), an ultra vires statute. The Association responded that the management committee had acted without authority and contrary to state law when it agreed to lower the monthly assessment, because the ownership interest in common areas and facilities could not be altered without the unanimous consent of all unit owners.

¶ 9 The Johannessens filed a motion for partial summary judgment and the Association filed a motion for summary judgment. The Association also filed a Motion to Strike the Johannessens' statement of facts as well as portions of David Johannessen's affidavit. The trial court struck paragraphs 11, 13, 14, and 16 of David Johannessen's affidavit and granted the Association's Motion for Summary Judgment, dismissing with prejudice all of the Johannessens' claims.

¶ 10 The trial court relied upon the following undisputed facts: (1) a contract was entered into between the Johannessens and the Association whereby the Association "effectively adjusted the par value assigned to the [Johannessens'] condominium unit and the [Johannessens] subsequently purchased the unit"; (2) the Johannessens purchased the unit relying on the Association's promise that the monthly assessment would be $416 per month; (3) both the Declaration and Utah law required unanimous consent of all unit owners to modify the par value; (4) no such unanimous consent was obtained; and (5) the

Johannessens had constructive knowledge of both the Declaration and Utah law. Based upon these factual findings, the trial court made the following conclusions of law: (1) the Association acted without authority and in violation of law when it adjusted the par value of unit P9; (2) the agreement to adjust the par value of unit P9 without unanimous consent of all unit owners contravened the Utah Condominium Act and the Declaration, thus, the agreement was an illegal contract; and (3) Utah Code Ann. § 16–2–23 (1999), an ultra vires statute, was not intended to enforce illegal contracts. The Johannessens now appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 The Johannessens appeal the trial court's grant of summary judgment and the dismissal of their cross-motion for partial summary judgment. "Summary judgment should be granted only if there has been a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Harris v. Albrecht*, 2002 UT App 98,¶ 8, 46 P.3d 241, cert. granted 53 P.3d 1 (quotations and citation omitted). "[I]n reviewing the district court's grant of summary judgment, we review the court's legal decisions for correctness, giving no deference, and review the facts and inferences therefrom in the light most favorable to the nonmoving party." *Id.* (quotations and citations omitted).

¶ 12 In addition, we are presented with a question of statutory interpretation, which we review for correctness. *See State v. McKinnon*, 2002 UT App 214,¶ 3, 51 P.3d 729.

¶ 13 The Johannessens also appeal the trial court's striking of three paragraphs of David Johannessen's affidavit. We review a trial court's decision to admit evidence to determine whether the court exceeded its permissible range of discretion. *See Murdock v. Springville Mun. Corp.*, 1999 UT 39,¶ 25, 982 P.2d 65.

## ANALYSIS

¶ 14 The Johannessens argue that the trial court erred in concluding that the 1993

agreement between the Association and the Johannessens was made in violation of the law and therefore unenforceable. To properly review this claim, we must first determine the applicable law and examine its effect on the present situation.

¶ 15 Utah Code Ann. §§ 57–8–1 to –37 (Supp.2000)[1], the Condominium Ownership Act (the Act), applies to all condominium projects that have complied with the executing and recording requirements of the Act. The Declaration filed by Canyon Road Towers expressly provides that it was filed pursuant to the Act. The parties agree that the Declaration meets all the requirements of the Act. The Act therefore applies to Canyon Road Towers and requires each unit owner in a condominium complex to comply with the covenants, conditions, by-laws, and restrictions set forth in the condominium's declaration. *See* Utah Code Ann. § 57–8–8.

¶ 16 Pursuant to both Utah Code Ann. § 57–8–7(2), and the Declaration, the total ownership interest in the common areas and facilities must equal 100%. Because the monthly assessment a unit owner is required to pay is directly proportional to the ownership interest in common areas and facilities assigned to that unit in the Declaration, if one owner's assessment is altered, then every other owner's ownership interest is also altered. Thus, any change in the monthly assessment results in an alteration of every unit owner's ownership interest in the common areas and facilities. For this reason, the unit owners must consent to any change in the ownership interest in the common areas and facilities.

¶ 17 Utah Code Ann. § 57–8–7(2)[2] provides:

> Except as otherwise expressly provided by this act, the undivided interest of each unit owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all of the unit

owners expressed in an amended declaration duly recorded.

¶ 18 When interpreting a statute, "this Court's primary goal is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve." *Boulder Mt. Lodge, Inc. v. Town of Boulder,* 1999 UT 67, ¶ 15, 983 P.2d 570 (quotations and citations omitted). The best evidence of the true intent and purpose of the legislature in enacting the Act is found in the plain language of the Act. *See id.* Accordingly, to determine legislative intent we look first to the statute's plain language and assume that the legislature used each term advisedly. *See id.*

■ ¶ 19 Section 57–8–7(2) requires the consent of all unit owners before the ownership interest of any unit owner can be changed. A reduction in the monthly assessment paid by any unit owner alters the ownership interest of that unit, and in turn, alters the ownership interest and assessment fees of all other units in the complex. The facts are undisputed that the Association did not obtain the consent of all the unit owners before it reduced the Johannessens' monthly assessment. Thus, the trial court properly concluded that the Association violated the Act when it decreased the assessment of Unit P9 in 1993.

¶ 20 The Johannessens also argue that the trial court erred when it granted the Association's motion for summary judgment because the Association is estopped from increasing the Johannessens' monthly assessment and because the contract is enforceable pursuant to Utah Code Ann. § 16–6–23 (1999). We review these arguments against the backdrop that the agreement to reduce the Johannessens' monthly assessment violated the Act.

■ ¶ 21 The Johannessens first argue that the Association is estopped from raising their monthly assessment. We are unper-

---

1. Effective April 30, 2001, the Condominium Ownership Act was amended. Except as already noted herein, these amendments do not effect our substantive analysis, thus, we cite to the most recent version of the statute.

2. Effective May 1, 2000, Utah Code Ann. § 57–8–7(2) (1999) was amended. Former Section 57–

8–7(2) is now embodied in Section 57–8–7(3). The amended statute requires the consent of only two-thirds of the unit owners expressed in a duly recorded amended declaration. It is undisputed that neither the Association nor the Johannessens obtained the consent of any of the unit owners not on the Management Committee prior to reducing the Johannessens' monthly assessment.

suaded. To prove promissory estoppel a party must show that: "(1) the [promisee] acted with prudence and *in reasonable reliance* on a promise made by the [promisor]; (2) the [promisor] knew that the [promisee] had relied on the promise which the [promisor] should reasonably expect to induce action or forbearance on the part of the [promisee] or a third person; (3) the [promisor] was aware of all material facts; and (4) the [promisee] relied on the promise and the reliance resulted in a loss to the [promisee]." *See J.R. Simplot Co. v. Sales King Int'l, Inc.*, 2000 UT 92, ¶ 29, 17 P.3d 1100 (emphasis added)(alterations in original) (quotations and citations omitted).

¶ 22 Both the Act and the Declaration specifically state that prior to adjusting any unit's monthly assessment, the Association must obtain the consent of all unit owners. The Johannessens admit that no such consent was ever obtained. Thus, if we conclude that the Johannessens had actual or constructive notice of either the Act or the Declaration, the Johannessens could not have reasonably relied upon the Association's promise to lower their monthly assessment.

¶ 23 "[C]onstructive notice is imparted when documents are properly recorded." *See U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 35, 990 P.2d 945. Constructive notice also arises from a duty to inquire, also known as inquiry notice, when one has the burden of ascertaining "certain facts and circumstances." *See id.* (quotations and citations omitted).

¶ 24 Here, as stated earlier, it is undisputed that the Declaration was properly recorded in Salt Lake County, Utah. Therefore, we conclude that the Johannessens were under constructive notice of the Declaration and, by incorporation, of the Act.

Thus, the Johannessens knew or should have known that the entire population of the Canyon Road Towers unit owners had to consent to any change in the monthly assessment. *See generally Chateaux Condo. v. Daniels*, 754 P.2d 425, 426–27 (Colo.Ct.App.1988) (holding condominium unit owner had constructive knowledge of his share of common expenses because his deed specifically referred to the declaration of condominium).

¶ 25 Furthermore, the Johannessens knew that they were purchasing a unit in a condominium complex. They were thus put on inquiry notice to ensure that the Association, which lowered the monthly assessment, was empowered to do so and had complied with the Act.[3]

¶ 26 The Johannessens next argue that Utah Code Ann. § 16–6–23 (1999) prohibits the Association from raising the Johannessens' monthly assessment. In essence, the Johannessens argue that even though the Association acted without authority when it lowered unit P9's monthly assessment, section 16–6–23 prevents the Association from now avoiding the contract. Section 16–6–23, in relevant part, provides:

> No act of nonprofit corporations and no conveyance or transfer of real or personal property to or by such a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer. . . .

Section 16–6–23 limits the defense of ultra vires and provides third parties a measure of certainty when contracting with "a corporation in good faith without knowledge of the details of its articles of incorporation or of its internal operations." *Park v. Alta Ditch &*

---

**3.** Additionally, promissory estoppel should not be used to enforce a contract that is contrary to law. In *Peterson v. Sunrider Corp.*, 2002 UT 43, 48 P.3d 918, the Utah Supreme Court addressed the enforceability of an illegal contract. *Id.* at ¶¶ 38–41. The court stated that "[d]espite the general rule that 'every contract in violation of law is void' ", a contract that contravenes a statute "does not necessarily make the contract unenforceable." *See id.* at ¶ 39. If a contract is found to be illegal, the reviewing court must determine "whether a statute or public policy demands that the contract be held unenforcea-

ble." *See id.* In other words, the reviewing court must consider whether enforcing the contract is to the benefit or detriment of the parties the statute was designed to protect. *See id.*

The plain language of the Act demonstrates that the Act was designed to protect the interests of condominium unit owners from experiencing changes to their ownership interest without their consent. Enforcing this illegal contract would alter the property interest of each Canyon Road Towers unit owner without their consent. Thus, promissory estoppel cannot be used to enforce this illegal contract.

*Canal Co.*, 23 Utah 2d 86, 458 P.2d 625, 628 (Utah 1969). Here, we have concluded that the Johannessens had constructive knowledge of both the Act and the Declaration, including the limitations placed on changing the other owners' ownership interests without their consent. Thus, the Johannessens cannot rely upon the protections afforded under § 16–6–23.[4]

¶ 27 Finally, the Johannessens argue that the trial court erred when it struck portions of David Johannessen's affidavit. We review a trial court's admission of evidence to determine whether the court exceeded its permitted range of discretion. *See Murdock,* 1999 UT 39 at ¶ 25, 982 P.2d 65. We conclude that it did not. Furthermore, had the trial court admitted David Johannessen's affidavit in its entirety, our conclusion that the trial court properly granted the Association's motion for summary judgment would not change. Thus, if the court erred, error was " 'sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings.' " *See C.T. v. Johnson,* 1999 UT 35, ¶ 18, 977 P.2d 479 (citations omitted).

## CONCLUSION

¶ 28 We conclude that the trial court properly granted the Association's motion for summary judgment. The contract was contrary to both the Act and the Declaration and thus was unenforceable. Nor could the Johannessens rely upon promissory estoppel to prevent the Association from increasing their monthly assessment, because it was unreasonable for the Johannessens to rely upon the Association's promise. Likewise, the Johannessens are not protected by section 16–6–23, because they had constructive knowledge of the Act and the Declaration. Finally, we conclude that the trial court did not abuse its discretion when it struck portions of David Johannessen's affidavit. For the foregoing reasons, we affirm the trial court's grant of summary judgment.

4.  Utah Code Ann. § 16–6–23 (1999) was repealed and replaced by Utah Code Ann. § 16–6a–304 (2001), which took effect April 30, 2001. Section 16–6a–304 provides, in relevant part: "(1) Except as provided in Subsection (2), the validity of corporate action may not be challenged on the ground that the nonprofit corporation lacks or

¶ 29 WE CONCUR: NORMAN H. JACKSON, Presiding Judge and JUDITH M. BILLINGS, Associate Presiding Judge.

lacked power to act." The Johannessens' argument similarly fails under the revised statute. The Johannessens' constructive knowledge of the limitations set forth in the Act and the Declaration forecloses reliance on the revised statute as well as the statute in effect at the time of purchase.